HALL, Judge.
Plaintiff, a licensed civil engineer doing business under the firm name of G. A. *346 Heft & Co., filed suit on August 5, 1965 against the City of New Orleans to recover damages in the sum of $7,000.00 for breach of an agreement dated February 19, 1951, whereby he was employed by the City, acting through the New Orleans Railroad Terminal Board, to design and supervise the construction of a certain grade separation in the City of New Orleans identified as “The Burma Road (Poland Avenue) — L & N Railroad Grade Separation.”
Plaintiff alleged that the City breached its contract with him by entering into an agreement dated August 11, 1964 with another firm, viz. B. M. Dornblatt & Associates Inc., to perform the same services.
After an exception of vagueness was sustained by the Trial Court plaintiff amended and supplemented his petition in certain respects and also acknowledged that he had received $2,000.00 of the $7,000.00 consideration provided for in his contract. To the petition as amended and supplemented defendant filed a plea of prescription of ten years under the provisions of LSA-C.C. Art. 3544 and a plea of prescription of one year under the provisions of LSA-R.S. 9:5602(2), both of which pleas were referred to the merits and later overruled by the Trial Court.
In its answer to the suit the City set up as its primary defense the contention that its contract of February 19, 1951 with plaintiff and its contract of August 14, 1964 with B. M. Dornblatt & Associates Inc. covered entirely separate and distinct grade separations. During trial of the case on the merits defendant filed an exception of no cause nor right of action which was overruled and the trial proceeded to its conclusion.
On April 13, 1966 the Trial Judge rendered judgment in favor of the City dismissing plaintiffs suit at his cost. Plaintiff appealed.
The Trial Judge assigned the following reasons for his dismissal of plaintiff’s suit:
“The Court is convinced that Heft No.. 1, the agreement between the Board and’ George A. Pleft, and Heft No. 2, the-agreement between the Board and B. M. Dornblatt, refer to separate and distinct projects and do not pertain to the same-grade separation.
“Consequently, the Court is of the opinion that the City did not breach the contract at issue, Pleft No. 1, when it entered into the Dornblatt agreement, Heft No. 2.”
Although the City has raised several alternative defenses to plaintiff’s suit the main issue presented by this appeal is whether the Heft contract and the Doru-blatt contract cover the same grade separation project.
Both contracts were entered into by the-City pursuant to the provisions of the Union Passenger Terminal Agreement of October 22, 1947, which was an agreement entered into between the City of New Orleans and various railroad companies for the purpose of establishing a central passenger terminal. In order to accomplish this, purpose the Agreement provided, generally speaking, for a rearrangement and relocation of the railroad lines entering the City; for the construction of grade separations, (underpasses or overpasses) where the major traffic arteries of the City intersected the railroad lines; and for the closing of all other grade crossings except those deemed absolutely necessary at the-time. In Section 11 of the Agreement the City obligated itself to construct grade separations on the major streets listed therein within the time limit therein specified, and' in Section 12 thereof reserved’ unto itself the right to construct at anytime within 20 years from “Completion-Date” (April 16, 1964) other grade separations at locations chosen by it. The- cost of the various grade separations contemplated by the Agreement (both of those-constructed under Section 11 and those constructed under Section 12) was stipulated to be borne by the City and the Railroads in? *347 the respective manners and proportions set forth in the two sections, the manner of payment of their share of the cost of grade separations constructed under Section 11 being less onerous to the Railroads than the manner stipulated for the payment of their share of the cost of grade separations which might be constructed under the provisions of Section 12.
Section 11 of the Union Passenger Terminal Agreement reads in part as follows:
“Section 11. A. The City agrees to provide, or have provided, grade separations between railroad tracks and the following streets and highways:
******
(111) Between the tracks of the Louisville and Nashville Railroad Company •and
******
Burma Road (Poland Avenue)
******
“B. * * *
“All separations provided for in Para.-graph A of this section * * * shall 'be completed prior to Completion Date; ■provided, however, that an extension ■of time for completion of any grade separation * * * may ke agreed to * * * by the carrier or carriers upon whose property the separation is to be situated * * * ”
Plaintiff’s contract with the City dated 'February 19, 1951 in terms covered engineering services:
“ * * * for following described grade separation:
DESIGN OF AND SUPERVISION OF THE CONSTRUCTION OF THE BURMA ROAD (POLAND AVENUE) —L & N RAILROAD GRADE SEPARATION.”
The City’s contract with B. M. Dornblatt Associates dated August 11, 1964 covered by its terms the same type of engineering services
“ * * * for tjje following described grade separation:
“OVERPASS — BURMA ROAD (POLAND) LOUISVILLE & NASHVILLE RAILROAD COMPANY * *”
Unquestionably the contract between plaintiff and the City provided for the design and supervision of the construction of the grade separation as designated in Section 11 A (111) of the U. P. T. Agreement between the tracks of the L & N Railroad and Burma Road. Plaintiff contends that the Dornblatt contract covers the same project, while the City contends that the Dornblatt contract was for the design and supervision of the construction of a grade separation to carry Alvar Street over the tracks of the L & N Railroad and was to be constructed under Section 12 of the Terminal Agreement.
There is no difference material to this case between the engineering services called for by the two contracts, and the fact that the Dornblatt contract called for an overpass instead of an underpass as proposed by plaintiff is likewise immaterial, the words “grade separation” as used in the U. P. T. Agreement meaning either an overpass or an underpass. The question is whether the two contracts covered the same proj ect.
The record reveals that as of October 22, 1947, the date of execution of the U. P. T. Agreement, Burma Road constituted part of a major traffic artery of the City, designated as such by the City Planning Commission. Commencing at the river as Poland Avenue this major traffic artery ran in a northerly direction to the lake just west of and parallel to the Industrial Canal and was composed of Poland Avenue, France Street and Burma Road. Preliminary to the drafting of the U. P. T. Agreement the place where Burma Road crossed the L & N Railroad tracks had been *348 designated by the City Planning Commission for inclusion in Section 11 A of the Agreement as the location of one of the grade separations necessary to be constructed by the City.
Very shortly after the City entered into the contract with plaintiff to design this grade separation, the City began to encounter difficulty with the Board of Commissioners of the Port of New Orleans (“Dock Board”) relative to the use of Burma Road, Dock Board owned property, as a major street and plaintiff was so notified.
In August of 1951 the City Planning Commission changed the major street plan and adopted Alvar Street as part of the major cross town artery in lieu of that portion of Burma Road lying between Florida Avenue and the Chef Menteur Highway (Highway 90). This resulted in the proposed new route crossing the L & N tracks some distance to the west of the Burma Road crossing.
On March 19, 1952 the City Planning Commission addressed a letter to plaintiff advising him of this change in the major street plan and stating the assumption that the change would “make it necessary to design a grade separation at the intersection of Alvar Street and the L & N Railroad which would replace the original plan to provide a grade separation at Burma Road and the railroad tracksand on May 6, 1952 plaintiff was notified not to start the design of the Burma Road— L & N grade separation.
Because of the change in the major street plan the City gave consideration to amending Section 11 A (111) of the U. P. T. Agreement by substituting a grade separation at Alvar Street in lieu of the separation at Burma Road provided for therein, and appealed to the New Orleans Union Passenger Terminal Committee suggesting such an amendment to the U. P. T. Agreement. The New Orleans Union Passenger Terminal Committee is an Agency comprised of representatives of the various railroads, the Public Belt Railroad Commission and tlie City, which pursuant to the provisions of the U. P. T. Agreement has supervision and control of the construction of the Terminal and appurtenant structures.
The Terminal Committee requested an opinion of its legal counsel, the late Harry McCall, who by letter dated July 8, 1953, advised the Committee, in part:
“It is my opinion that the Committee has no right to agree to any deletion from Section 11A of the grade separation in question. Any action on account of failure of the City to construct the Burma Road separation would not be vested in the Committee, but in the carrier directly involved; the carrier upon whose property the separation is to be situated having the right, as to certain classifications of grade separations, to agree to an extension of time for completion thereof. (Second Par. 11B)
“Certainly, the Committee would, under the Terminal Agreement, have no authority to enter into any agreement with the City as to grade separations at other locations being substituted for those contemplated at Burma Road. Any separations at locations other than those set out in Section 11A would come under 12C and therefore the carriers’ contribution to the cost thereof would be from their own funds and not from Bond Proceeds.”
In the light of the general counsel’s opinion the Terminal Committee resolved to take no action toward amending the U. P. T. Agreement and so advised the Terminal Board.
Being unable to amend the U. P. T. Agreement so as to substitute the separation at Alvar Street for the Burma Road separation called for therein, and being faced with the obligation, notwithstanding the changed conditions, to construct the latter *349 separation within a certain specified time, the City had no alternative but to endeavor to extend the time for completion thereof under the provisions of Section 11 B of the Agreement. With the concurrence of the L & N Railroad the construction of the Burma Road separation was postponed indefinitely.
By letter dated October 19, 1953 the Terminal Board advised plaintiff of the indefinite postponement of this project, and instructed him to invoice the City for all payments due him to date under the provisions of his engineering contract of February 19, 1951:
“ * * * and upon approval of these invoices by the Board and payment thereof, to continue the indefinite suspension of your engineering services for this project.” (Emphasis supplied)
Plaintiff delayed billing the City until December 22, 1954. Meanwhile he had appeared at a meeting of the Terminal Board on February 2, 1954 to discuss payment for services already rendered under his contract. He stated to the Board that he felt he was entitled to compensation for this work but at the same time he wanted some assurance from the Board that before adjusting the matter along these lines he desired to secure from the Board a formal statement of intention that if in the future the City desired to lift the indefinite suspension of the construction of the project that his office would continue their contract as consulting engineers on the project. The Board refused to give any such assurance to plaintiff and stated that it would express no views on his proposal prior to submission of a detailed statement itemizing the payment then due. The Board has never given plaintiff the assurance requested by him.
On December 27, 1954 plaintiff rendered Ris bill for services rendered prior to the indefinite suspension of his contract of February 19, 1951.
The City paid the bill on December 27, 1964. Since the date of this payment no step whatever has been taken in furtherance of the design or construction of a grade separation at the Burma Road crossing of the tracks of the L & N Railroad.
In the latter part of 1963 the City,, through the Terminal Board gave consideration to the construction of a grade separation at Alvar Street and the L & N tracks, and invited plaintiff to attend a meeting of the Board scheduled for December 19, 1963'. to discuss terms and conditions of a contract for the design of such a separation. Plaintiff attended the meeting but his-terms and conditions for the engineering-services on such project were unacceptable to the Board. Plaintiff was advised by letter dated April 6, 1964 that the Board had made other arrangements for the engineering services.
On August 11, 1964 the New Orleans Railroad Terminal Board entered into the-contract with B. M. Dornblatt & Associates-Inc. for the design and supervision of construction of the project.
This suit followed on August 5, 1965.
In support of his contention that his contract of February 19, 1951 and the Dorn-blatt contract of August 11, 1964 cover the-same project, plaintiff points to the similarity of language contained in Article 1 of each contract which briefly describes the construction project proposed. Plaintiff’s contract describes the project as-“BURMA ROAD (POLAND AVENUE) L & N RAILROAD GRADE SEPARATION” while the Dornblatt contract describes the project as “OVERPASS— BURMA ROAD (POLAND) LOUISVILLE AND NASHVILLE RAILROAD-COMPANY.” Moreover there is no mention of Alvar Street in the Dornblatt contract.
Neither contract contained any “geometries” — that is to say neither contract contained any mathematical fixation of the- *350 place where the separation was to be placed.
Following execution of his contract Dornblatt was instructed by the Terminal Board to obtain from the City Engineer’s office a print of the preliminary layout of the project which would show the center line alignment of the structure to be designed by him. When he secured this layout indicating the alignment he found that the overpass was not intended to carry Burma Road over the L & N tracks but was to be designed so as to carry Alvar Street (as extended) over the tracks. He realized then that an error had been made in the “title” of his contract but testified that he had no authority to change it. Mr. Lewis, Director of the Terminal Board, testified that the designation of the project in the Dornblatt contract as “Burma-Road (Poland Avenue)” was made by him; that Alvar Street was not mentioned therein in order to avoid confusion with another overpass which was designated as “Poland-Alvar-Burma Road” which carried Alvar Street over the New Orleans Public Belt and the New Orleans Terminal railroad tracks.
The preliminary layout which Dornblatt obtained from the City Engineer’s office placed the south end of the overpass in Alvar Street. Alvar Street runs in a northerly direction parallel to and some .500 plus feet west of Burma Road (France Street). Had the proposed overpass been extended straight north along Alvar Street as projected it would have crossed the L & N tracks some 500 plus feet west of Burma Road and would have run through the Schwegmann Supermarket property which lies just north of the tracks. In order to avoid the Schwegmann property the City Engineer’s center line alignment carried the proposed overpass in a northeasterly curve from its southern end in Al-var Street so that it crossed the L & N tracks at an angle some 200 feet west of Burma Road. After crossing the tracks dhe curve gradually turned more to the north so that the northern end of the overpass would be situated in Burma Road at a point just north of the Chef Menteur Highway (Highway 90) which point is some distance north of the L & N tracks.
Obviously this center line alignment which Dornblatt had to follow would result in an overpass far different from a grade separation at Burma Road.
But plaintiff contends that the U. P. T. Agreement was confected with a great deal of flexibility particularly with regard to the designation of grade separations as set forth in Section 11A of the Agreement. He contends that when the U. P. T. Agreement provided for a grade separation “between the tracks of the L & N Railroad Company and Burma Road,” construction of that grade separation was not necessarily confined to that specific location, and that an overpass constructed in accordance with the alignment given Dornblatt by the City Engineer would satisfy both the provisions of Section 11A of the U. P. T. Agreement and his own contract which called for a separation at Burma Road.
Plaintiff points out that when the major street plan was changed the City Planning Commission wrote him the letter of March 19, 1952 stating that it would become necessary to design a grade separation at the intersection of Alvar Street which would replace the original plan for a Burma Road separation. He testified that in accordance with that letter he conferred with the Board’s administrative engineer regarding the problem and prepared and submitted a map dated January 17, 1953 reflecting “a relocated Burma Road grade separation” approximately 700 feet west of the existing Burma Road. The alignment of the separation shown on plaintiff’s map of January 17, 1953 is similar in many respects to the alignment given Dornblatt by the City Engineer. Counsel points to his map as being the solution of the problem of making the change in the major street plan fit into the requirement of Section 11A for a separation at Burma Road.
*351 However, if the solution was that simple why did the Terminal Board in 1952 request an amendment of the U. P. T. Agreement deleting the separation at Burma Road and substituting therefor the crossing between Alvar Street and the L & N tracks?
Mr. Harry McCall pointed out very definitely in his opinion to the Board that any separations at locations other than those set out in Section 11A would have to be constructed under the provisions of Section 12C. We take this to mean that a separation built at a location other than where Burma Road crossed the L & N tracks would not satisfy the provisions of Section 11 A.
On October 19, 1963 the Terminal Board indefinitely postponed the building of the Burma Road project thus effectively rejecting plaintiffs “solution”. The suspension of the Burma Road project has never been lifted and perhaps never will be since we do not presume that the City will build two grade separations at the L & N tracks within 200 feet of each other.
The record does not in our opinion reveal that the U. P. T. Agreement was intended to be so flexible that an overpass designed and constructed in accordance with the alignment furnished Dornblatt would satisfy the obligation undertaken by the City in Section 11A to construct a separation at Burma Road.
For the foregoing reasons we agree with the factual conclusion reached by the Trial Court that plaintiffs contract and the Dorn-blatt contract “refer to separate and distinct projects and do not pertain to the same grade separation.” It follows that the City did not breach its contract with plaintiff when it entered into the agreement with B. M. Dornblatt & Associates Inc.
The judgment appealed from is affirmed; costs of this appeal to be borne by plaintiff-appellant.
Affirmed.